IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| ROBIN HALL, | : | |
| | | Civil No.  1:07CV 0040 DAK |
| Plaintiff, | : | |
| | | |
| v. | : | ORDER |
| | | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | | |
| | : | Honorable Dale A. Kimball |
| Defendant. | | |

**The Standard of Review**

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks omitted).  This Court "may neither reweigh the evidence nor substitute [its] discretion for that of the [ALJ]." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002).  Where evidence as a whole can support either the Agency's decision or an award of benefits, the Agency's decision must be affirmed.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## Analysis

Hall makes the following arguments: (1) the ALJ did not properly consider the credibility of her subjective complaints (Pl.'s Br. in Supp of Pet. for Rev. hereinafter referred to as "Pl.'s Br." 13-16); (2) the ALJ failed to properly consider her treating physicians's opinions (Pl.'s Br. 5-10); (3) the ALJ's decision is not supported by the findings of the State agency physicians (Pl.'s Br. 11-12); (4) the ALJ ignored the testimony of Dr. Moore, a medical expert, who testified at the administrative hearing (Pl.'s Br. 10-11); and, (5) the ALJ did not rely on the vocational expert's response to a hypothetical question, which credited her subjective complaints (Pl.'s Br. 13).

**1. The Credibility Evaluation.**

Hall challenges the ALJ's finding that she was not entirely credible.  He noted substantial evidence of record, which indicated that Hall complained in order to obtain narcotic medications, not prophylaxis of her migraines, appeared to manipulate several health care providers, and that her migraines were controlled when she finally took prophylactic medication.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ properly considered the extent to which a claimant's impairment was controlled by medications in evaluating credibility); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (noting that claimant's "drug-seeking behavior further discredits her allegations of disabling pain").

The ALJ is "the individual optimally positioned to observe and assess witness credibility."  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset

such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints, and explain why if he concludes those complaints are not credible. *See id.*; *see also* Soc. Sec. Rul. (SSR) 96-7p, 1996 WL 374186, at *4 (1996) (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision"). This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ cited substantial evidence in support of his reasons (Tr. 16-17). For instance, in June 2003, Dr. O'Driscoll noted Hall was "evasive" about treatment for her headaches; and, that in the past year another health treatment provider refused to give her any further narcotics and noted she had more than 40 prescriptions for controlled substances (Tr. 206). In July 2003, Dr. Knowlton noted that Hall "seemed upset at not getting narcotics" (Tr. 205). In September 2003, Dr. Johnson gave Hall a shot of Stadol and Phenergan, but insisted that she sign a shot contract with her primary care physician (Tr. 198). The ALJ noted that Hall sought narcotic medications usually once a month through 2003 (Tr. 16; *see also* Tr. 116, 123, 124, 128, 166-205). In October 2003, Hall told Dr. Milligan that she tolerated large doses of Stadol and Phenergan "well" (Tr. 185). Hall received three narcotic shots in the first week of January 2004, after being put on a shot contract limiting her to three shots per month (Tr. 160-62). Thereafter, on January 6, 2004, she requested Stadol nasal spray (Tr. 158). In March 2004, Hall's shot contract was amended to allow four shots per month, one shot per week

(Tr. 136). In April 2004, she talked an emergency room physician into giving her a narcotic shot (Tr. 213). Also, in April 2004, Dr. Kuo gave Hall samples of Norvasc as prophylactic treatment for her migraines (Tr. 218). In May 2004, Dr. Kuo told Hall not to get her narcotics from the emergency room, but to go to her primary care physician instead (Tr. 215). Finally, in February 2005, Dr. Kuo noted that Hall's migraines were controlled with Norvasc, as she stated that she had migraines once every month or few months, that her migraines were "much less intense," and that she was pleased with the "positive effects" on Norvasc (Tr. 293). *See, e.g.*, *Kelley*, 62 F.3d at 338.

A reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review" where the ALJ has given specific, legitimate reasons for disbelieving the claimant's testimony. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). Having met this standard, the ALJ's credibility finding is upheld by this Court.

**2. The Treating Physician "Opinions."**

Hall challenges the ALJ's evaluation of the treating physicians' opinions. However, no treating physician gave a "medical opinion" that gauged the nature and severity of her impairments. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); SSR 96-2p, 1996 WL 374188, at *2 (1996) ("'Medical opinions' are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling

weight."). Rather the treating physicians of record indicated only that Hall had impairments, a point not in dispute.

**3. The Opinions of the Non-Examining Physicians and Psychologists.**

The State agency physicians and psychologists supported the ALJ's finding that Hall could perform unskilled, light work. Notably, these physicians and psychologists were the only sources to assess the nature and severity of Hall's impairments. Specifically, in May 2004, a State agency psychologist (signature illegible), found that Hall was "capable of at least unskilled types of work with minimal public contact" (Tr. 288-89; *see also* Tr. 273, 277 – referring to case summary). And, in October 2004, another State agency psychologist (signature illegible), found that Hall could perform "at least simple types of work" (Tr. 287-88; *see also* Tr. 261, 277 – adopting previous assessments). Also, Drs. Taggart and Burkett found that Hall could perform light work (Tr. 279-90). These findings were more than adequately explained in the case summaries (Tr. 287-89). Therefore, contrary to Hall's argument, these opinions provided support for the ALJ's decision. *See Richardson v. Perales*, 402 U.S. 389, 408 (1971) (holding that use of a nonexamining expert is proper); 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180, at *2 (1996) ("[F]indings of fact made by State agency . . . [physicians and psychological consultants] . . . regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of nonexamining physicians at the [ALJ] and Appeals Council level of administrative review.").

### 4. The Medical Expert's Testimony.

Dr. Moore testified that Hall's impairments "might" or "could" equal the Listings *if her testimony was entirely credible* (Tr. 407, 413-14).  However, as discussed above, the ALJ found that Hall was not entirely credible.  Therefore, this testimony was not relevant to the decision as it was premised on Hall's complaints, which were found not credible.  Rather, Dr. Moore's testimony that Hall's impairments did not meet or equal the Listings on the basis of the medical evidence was relevant (Tr. 391, 405, 413-14).

### 5. The Step-Five Finding.

To find Hall not disables, the ALJ had to show that Hall could perform other jobs which existed in significant numbers in the national economy.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).  This may be met through vocational expert testimony.  *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).  The ALJ obtained such testimony from a qualified vocational expert, Ms. Galli, who testified that an individual with Hall's residual functional capacity and vocational profile could perform the unskilled, light job of mail clerk (180,000 jobs nationally), and the unskilled, sedentary job of final assembler of optical parts (30,000 jobs nationally) (Tr. 408-11).  Hall's argument that the ALJ should have included limitations as expressed in her testimony is without merit.  "The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995).  The ALJ, therefore, appropriately relied on this evidence to find

that Hall could perform jobs existing in significant numbers in the national economy and was not disabled.  See *Gay*, 986 F.2d at 1341; *Qualls*, 206 F.3d at 1373.

## Conclusion

Based upon the above analysis, IT IS HEREBY ORDERED that the Commissioner's decision denying Hall's application for supplemental security income is AFFIRMED.

DATED this 21st day of November, 2007.

BY THE COURT

_____  Dale A. Kimball
United States District Judge
